1
2
DANIELS, FINE, ISRAEL,
SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807
3
Moses Lebovits, State Bar No. 66552
Daniel Nickfardjam, State Bar No. 337855
4
lebovits@dfis-law.com; nickfardjam@dfis-law.com
5
Attorneys For Plaintiff WILLIAM B. ROSE
6
7
8
UNITED STATES DISTRICT COURT
9
CENTRAL DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| | Case No. 2:21-cv-10019 |
| 11  WILLIAM B. ROSE, | |
| 12         Plaintiff, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL** |
| 13  vs. | |
| 14  MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY | |
| 15  GENERAL OF THE UNITED STATES; UNITED STATES OF AMERICA | |
| 16  FEDERAL BUREAU OF INVESTIGATION; DIRECTOR | |
| 17  CHRISTOPER A. WRAY, IN HIS OFFICIAL CAPACITY AS DIRECTOR; | |
| 18  SSRA TYLER McCURDY; AND DOES 1-10, | |
| 19         Defendants. | |
| 20 | |
| 21 | |

22      COMES NOW Plaintiff WILLIAM B. ROSE, (hereinafter "Plaintiff or
23  Rose"), and alleges as follows:
24                          **INTRODUCTION**
25      1.      This suit is brought by Plaintiff William B. Rose ("Rose"), a Special
26  Agent ("SA") of the United States Federal Bureau of Investigation ("FBI") who was
27  discriminated against and subjected to Religious Discrimination and Age
28  Discrimination, which created a hostile work environment, beginning in 2019 and

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1    continuing through 2020.  Rose was also subjected to retaliation and reprisal from
2    his supervisors in 2021 because of the filing of an EEOC Complaint in March 2021.

3         2.    Rose has worked as a Special Agent for the FBI for 22 years.  Initially,
4    Rose requested to work at the Ventura Resident Agency (RA), but was informed
5    that agents needed to put in their time in Los Angeles before being transferred to
6    Ventura.  His first nine years in the FBI was in Los Angeles.  During those nine
7    years, Rose was by all accounts an exemplary agent.

8         3.    Approximately 13 years ago, Rose was transferred to work at the
9    Ventura RA.  During Rose's 21 years as an FBI agent, Rose has always met or
10   exceed his job performance ratings during his annual reviews from his supervisors.

11        4.    Since 2016, Rose has been given an overall rating of "Excellent" or
12   "Consistent Performer" by his rating official, SA Tyler McCurdy ("McCurdy").  In
13   January 2021, Rose was given an overall rating of "Consistent Performer" by
      McCurdy in his performance wrap-up.  In acknowledgment of his thorough work
15   during his employment with the FBI, Rose has received numerous recognitions and
16   awards.  In April 2018, Rose was the only SA chosen from the Ventura RA to
17   receive a public safety award.

18        5.    In September 2019, Rose's chain of command received a letter from
19   the US Attorney's Office complementing the work Rose had performed on a trial
20   that yielded favorable results.  However, beginning in 2019 and continuing through
21   2020, Rose was subjected to Religious Discrimination and Age Discrimination,
22   which created a hostile work environment.  Further, he was subjected to retaliation
23   and reprisal from his supervisors in 2021 after his filing of an EEOC Complaint in
24   March 2021.

25        6.    On January 19, 2021, Rose participated in a skype call with a support
26   employee from the Sacramento FBI Office. The call was eavesdropped on by SOS
27   Jen Moran. FBI Management knew Staff Operations Specialist ("SOS") Moran had
28   animus against Rose, which had documented and provided to his chain of command.

2

1    Previously SOS Moran made an unsubstantiated OPR complaint of which FBI

2    Management was aware. In addition, FBI Management had received multiple

3    complaints about SOS Moran from other FBI employees.

4        7.      On January 22, 2021, FBI Management falsely accused Rose of having

5    problems with the US Attorney's Office, FBI Headquarters, and agents and support

6    staff at Ventura RA. The skype call was mischaracterized by FBI management and

7    cited as the reason for Rose's transfer from the Ventura RA to a surveillance squad.

8    FBI Management displayed their bias when they did not allow Rose to explain the

9    specifics of the skype call.

10       8.      Traditional EEO Counseling failed when FBI Management denied

11   Rose's request to return to the Ventura RA. Assistant Special Agent in Charge

12   ("ASAC") Akil Davis told the EEO Counselor his transfer was not solely about the

13   skype conversation and there had been several incidents which culminated in his

14   transfer.

15       9.      In or about late January or early February 2021, SSRA McCurdy

16   misrepresented the date of the skype call when he wrote in Rose's Performance

17   Check-In, that it occurred on January 21, 2021. This erroneously led the reader to

18   believe Rose's transfer was done the day after the skype call. SSRA McCurdy cited

19   the skype call as the only reason for Rose's transfer

20       10.     Rose then served the EEOC with his Complaint on March 23, 2021,

21   which included allegations pertaining to Religious Discrimination, Age

22   Discrimination, and hostile work environment.

23       11.     On March 22, 2021, Rose served the Employment Opportunity

24   Commission ("EEOC"), Office of Federal Operations, with his Notice of Intent to

25   file a civil action under 15(d) of the Age Discrimination Employment Act of 1967.

26       12.     Rose later served the EEOC with his First Amended Complaint on

27   April 29, 2021, which incorporated allegations of retaliation/reprisal Rose faced as a

28   result of submitting his EEO Complaint on March 22, 2021.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

3

_____
**COMPLAINT**

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

13. Rose continues his employment with the FBI, but is no longer located at the Ventura RA.  In January 2021, after Rose informed the other agents at the Ventura RA that he was being transferred to a different office, many of the SA sent Rose emails and text-messages commending him for the work he had done at the Ventura RA during his time at that location. In April 2021, Mr. Rose was transferred to the Roybal Building in downtown Los Angeles, 54.5 miles from his home in Camarillo, CA.

14. Plaintiff asserts claims against the FBI of religious and age discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII") and of retaliation against him for having engaged in protected activity by objecting to his harassment by the FBI, also in violation of Title VII, 42 U.S.C.§ 2000e-3(a).

## FACTS SURROUNDING MR. ROSE'S CLAIMS

15. Beginning in 2019 and continuing through 2020, Rose's supervisor, SSRA McCurdy, continually increased his criticism of Rose and his work, while simultaneously adding cases to Rose's workload, creating a hostile work environment.  McCurdy also began referring to Mr. Rose as a "senior agent" and gave preferential treatment to agents of other religions during this time frame.

16. Mr. Rose never previously had a supervisor refer to him as a "senior agent" until McCurdy began to continuously refer to him as a "senior agent" when McCurdy threatened or criticized Rose while working at the Ventura RA. Furthermore, despite Rose's performance reviews and accolades, McCurdy also demanded that Rose come to his office more times than he had demanded for any other SA assigned to the Ventura RA during the same time frame.

## A.  Facts surrounding Rose's Claims in 2019

17. On May 29, 2019, McCurdy called Rose into his office and yelled at him while also making accusations about Rose that were not true.  McCurdy was upset

4

_____
**COMPLAINT**

and complained that Rose was being "cynical" about the US Attorney's Office and their failure to prosecute cases. McCurdy further stated that "senior agents" should not do that. Mr. Rose took offense to McCurdy calling him a "senior agent."

18. On or about May 31, 2019, McCurdy had an office meeting with SA and support staff at the Ventura RA, and Rose attended this meeting. During the meeting, McCurdy stated that he did not want to hear complaints from "senior agents" about cases not being prosecuted by the US Attorney's Office. Being as McCurdy had just spoken about this exact topic with Rose days prior, Rose took these discriminatory comments to mean that McCurdy was speaking directly about Rose.

19. Following this meeting, multiple SA commended on how inappropriate McCurdy's comments were and how he was singling out "senior agents." McCurdy's comment about "senior agents" was clearly directed at Rose since McCurdy had accused Rose of having a negative attitude toward the US Attorney's Office only two days earlier.

20. Furthermore, McCurdy incessantly singled out Rose for bad treatment during June 2019 to June 2020, while allowing other agents to abandon their work and investigation of their cases. Rose and McCurdy do not practice the same religious beliefs. Rose is Catholic and McCurdy practices the Mormon religion. It is Plaintiff's contention this is the reason for the egregious treatment of Rose.

21. From approximately June 2019 to June 2020, McCurdy continuously micromanaged Rose and another non-Mormon older agent regarding their specific gang cases. During this same time when McCurdy exhibited age and religious bias toward Rose, McCurdy allowed a younger Mormon agent, SA Chris Melzer ("Melzer"), to completely neglect his cases and workload. Rather, instead of coming to work, McCurdy allowed SA Melzer to spend multiple months remodeling his home during work hours. This was a well-known fact amount multiple SAs at the Ventura RA. Rose, and other agents at the Ventura RA, contend that if SA Melzer was not

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

5

Mormon, McCurdy would not have allowed Melzer to remodel his home and abandon his work for the FBI.

22.     More so, Melzer's behavior was so well known by other agents at the Ventura RA and Task Force Officers ("TFO") that during a gang meeting lead by Melzer, in response to Melzer's question to a TFO about reporting any updates on his gang case, the TFO stated that he "was too busy remodeling his home and had nothing to report as a result."

23.     In December 2019, McCurdy assigned a RICO investigation to Rose and another older SA, despite the fact that Melzer was the agent who started investigating the case.

## B.  Facts Surrounding Rose's Claims in 2020

24.     In January 2020, McCurdy rejected an older SA with 15 years of experience who expressed interest in wanting to investigate gangs while working at the Ventura RA.  Instead of choosing a SA with more experience, McCurdy chose a younger agent who had less than two years of experience and was still on his probationary work period.  McCurdy gave preferential treatment to Melzer during this time because McCurdy only allowed Melzer to interview and choose the agent who would work gangs in the Ventura RA.  McCurdy did not allow Rose or other older agents interview this younger agent for the position.

25.     On February 6, 2020, McCurdy held a meeting with Rose and three other agents, including Melzer.  During this meeting, for reasons unknown, Melzer became very angry and began to shout at Rose.  Every time Rose said something, Melzer screamed a question at him or challenged Rose's statements.  Melzer's face was red, and he had become distraught and hysterical.  McCurdy sat and watched Melzer scream and berate Rose, yet he took no affirmative action himself to stop Melzer's conduct.  Melzer then stood up and stepped toward Mr. Rose as he continued to shout down at Rose. Rose was waiting for McCurdy, as his superior to intervene and de-

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

escalate the situation. McCurdy simply sat quietly and watched Melzer yell and belittle Rose.

26.     During this meeting, Melzer got within an inch of Rose's face and continued to scream at Rose incoherently for several seconds.  SA Dave Hand ("Hand"), who was also present at this meeting, then asked McCurdy if he was going to do anything to resolve the situation.  Finally, McCurdy stood up and dismissed everyone from his office, except for Rose.  McCurdy yelled at Rose to stay behind so he could talk to him.  During their private meeting, McCurdy was excited and angry. He yelled at Rose and stated that he expected more from a "senior agent."  Being as it was only Rose and McCurdy in the room, Rose knew McCurdy's discriminatory statement was aimed directly at him. Rose had no idea why McCurdy was singling him out and treating him this way.

27.     Before Rose was told to leave the room, McCurdy then informed Rose that if Melzer and Rose had actually began to fight, McCurdy would not have broken it up and instead would have been a "participant" in helping Melzer fight Rose. McCurdy was extremely serious when he made this statement and Rose believed McCurdy's statement to mean that his own supervisor at work wanted to fight him, further creating a hostile work environment.  Later that same day, McCurdy and Melzer met with Hand and tried to convince Hand that Rose was a bad influence on the other SA.  Hand rejected this notion.

28.     On February 7, 2020, McCurdy further insulted Rose by telling Rose that he was arrogant and condescending, and that a "senior agent" should support cases. However, during this same time, McCurdy continuously made excuses for Melzer's behavior at the Ventura RA, while simultaneously ignoring Melzer's absence from work as Melzer continued to work on remodeling his home.

29.     On May 28, 2020, McCurdy continued his discriminatory comments aimed at Rose when he complained to Rose that as a "senior agent," Rose's shortcomings as an investigator were no excuse for cases not being prosecuted

7
_____
**COMPLAINT**

federally. Rose was not sure why McCurdy made this comment toward him, being as he had been given praise by other individuals in the FBI for the work he was performing on his cases.

30.     On May 29, 2020, McCurdy unexpectedly told Rose that he was going to re-assign Rose from investigating gangs to investigating white-collar crimes. This was surprising because McCurdy had told Rose that he was a bad agent the previous day, but was now assigning Rose to a high-profile and complex murder investigation via email. It is Rose's belief and contention that McCurdy assigned Rose this case as a punishment in the hopes that Rose would retire from the FBI. Rose had become eligible to retire only two months before being assigned the murder investigation.

## C.  Facts Supporting Rose's Claims in 2021

31.     On January 7, 2021, McCurdy's comments in Mr. Rose's 2020 Performance Wrap-Up further demonstrate his continuous age discrimination toward Rose as he was unjustifiably critical on Rose's work and explicitly referred to Rose as a "senior agent."

32.     On January 22, 2021, FBI Management falsely accused Rose of having problems with the US Attorney's Office, FBI Headquarters, and agents and support staff. Rose was then told he was going to be reassigned to a six-month TDY to SOG (Surveillance Squad) in the San Fernando Valley, 32 miles from Rose's home. The Ventura RA was only 12 miles from Rose's home. It is well-known among agents that SOG is a dumping ground for "problem" agents. It is also well-known that the Los Angeles Field Office of the FBI has a long and detailed history of punishing agents with "freeway therapy" in the hope that they retire. Rose suddenly found himself in this exact situation.

33.     Additionally, Rose's chain of command took adverse employment action against him, further evidencing their bias toward him. McCurdy refused to listen to Rose and ASAC Davis told Rose that "[his] words were falling on deaf ears."

**COMPLAINT**

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

### D. Rose's Career in the FBI

**34.**   Rose has clearly shown that he can do his job properly and effectively throughout the last 21 years that he has worked at the FBI.  In fact, ASAC David told Rose that he was "the best investigator at the Ventura RA" prior to Rose being told he was going to be transferred to a different office.

35.   It is evident that Rose's transfer served no operational need and was the culmination of a continuous and escalating pattern of age and religious discrimination by FBI management against Rose.

36.   Upon hearing about Rose's transfer, both Agents and Task Force Agents were stunned and stated that they believed the FBI had made a mistake in transferring Rose.

### E. Retaliation/Reprisal

37.   After the FBI Los Angeles management failed to offer any resolution to Rose's complaints on March 3, 2021, Rose was left with no choice but to file a formal EEO Complaint. Rose's attorneys sent an email notifying the FBI of Rose's intent to sue.  Later this same week, FBI Los Angeles management retaliated against Rose by demanding that Rose choose a squad 46 to 54 miles from his home in Ventura County.

38.   On April 7, 2021, following Rose's formal EEO Complaint and only two months into Rose's TDY, ASAC Davis assigned Rose to a squad 54.5 miles from his house.  When Rose finally spoke to his new supervisor, the supervisor asked ASAC Davis if the purpose of Rose's transfer was to get him to retire.  The timing of Rose's transfer and the proximity of the transfer after Rose informed the FBI of his notice of intent to sue is alarming and highly questionable.  ASAC David could have assigned Rose to a squad in the FBI Westwood Office, 46 miles from Roses' home, but instead chose the only squad at the Roybal Building, 54.5 miles from Rose's residence.  This transfer violated FBI policy which requires a paid move for any transfer over 50 miles. Rose was never offered a paid transfer.  This is evidence of both retaliation and hostile work environment.

_____
**COMPLAINT**

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

**F. Ms. Moran's Complaint Against Rose**

39.     It should be noted that Jen Moran filed a Complaint against Mr. Rose in January 2021 with the Office of Professional Responsibility (OPR).  Ms. Moran claimed that. Rose bullied and harassed her during an incident when Ms. Moran overheard Rose speaking on a skype call. Rose was notified in June 2021 that OPR found that Ms. Moran's claims regarding him had no merit, and as a result, OPR would not be investigating Ms. Moran's allegations any further. It has always been Rose's position that he was not at fault for any of the conduct alleged by Ms. Moran.

40.     FBI Management cited Ms. Moran's allegations against Rose as the reason for his transfer to another office.  However, these claims were found to have no merit by the OPR.  Regardless, Mr. Rose was still transferred from the Ventura RA to a different office.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

41.     All conditions precedent to suit have been complied with in that a timely complaint of discrimination and retaliation was filed with the Department's Office of Equal Opportunity on March 23, 2021 and amended the EEO complaint on April 29, 2021.

42.     The Department's Office of Equal Opportunity has not issued a final agency decision in this matter and more than 180 days have elapsed since the filing of the administrative complaint. As such, plaintiff has exhausted administrative procedures and is authorized to file the instant complaint.  (29 C.F.R. 1614.107(b).

## PARTIES

43.     Plaintiff William B. Rose is a resident of the County of Ventura, California.  Plaintiff is currently employed with the Defendant United States Federal Bureau of Investigation and began work on November 7, 1999.  .

44.     Merrick Garland is the United States Attorney General.  He is the chief law enforcement officer and attorney for the United States of America, and is

**COMPLAINT**

authorized to control and direct the United States Justice Department and the Federal Bureau of Investigation ("FBI")

45.     Defendant United States Federal Bureau of Investigation is a federal agency. The United States Federal Bureau of Investigation's principal office is J. Edgar Hoover Building, 935 Pennsylvania Ave., N.W., Washington, D.C. 20535.

46.     Defendant Christopher A. Wray is the current director of the United States Federal Bureau of Investigation.

47.     SSRA Tyler McCurdy is an employee of the United States Federal Bureau of Investigation.

## JURISDICTION AND VENUE

48.     This Court has jurisdiction over this action under 28 U.S.C. §1331 and 1367, and specifically under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

49.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because the employment practices and other conduct alleged to be unlawful were committed in Los Angeles, within the Central District of California.

50.     At all relevant times, Defendant United States Federal Bureau of Investigation was covered by the definitions of "employer" set forth in 42 U.S.C. §2000e(b) of Title VII.

## STATEMENT OF CLAIMS
### FIRST CLAIM FOR RELIEF

(Religions Discrimination in violation of Title VII of the Civil Rights)

51.     The foregoing allegations are realleged and incorporated herein by reference.

52.     Religious discrimination is a form of discrimination that violates Title VII of the Civil Rights Act of 1964. Title VII also prohibits disparate treatment,

_____

**COMPLAINT**

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

job segregation, or harassment based on religious belief or practice (or lack thereof), as well as retaliation for the exercise of EEO rights.

53.     The Federal Bureau of Investigation subjected Plaintiff to different terms and conditions of his employment based on his religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, including but not limited to, subjecting him to sufficiently severe or pervasive harassment based on his religion being different than that of his immediate supervisor so as to alter the conditions and terms of his employment; condoning or tolerating such harassment; subjecting him to less favorable terms and conditions of employment, including but not limited to, harassing him, discriminating against him in job assignments, refusing to support his cases, and forcing him to accept transfers by making his work environment intolerable.

54.     The FBI's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

55.     The FBI's conduct discriminated against Plaintiff on the basis of his religion in violation of Title VII.

56.     As a direct and proximate result of the FBI's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**SECOND CLAIM FOR RELIEF**

(Age Discrimination in violation of

Title VII of the Civil Rights Act of 1964, as amended)

57.     The foregoing allegations are realleged and incorporated herein by reference.

12

**COMPLAINT**

58.     Age discrimination is a form of discrimination that violates Title VII of the Civil Rights Act of 1964.  Age discrimination involves treating an applicant or employee less favorably because of his or her age.

59.     The Age Discrimination in Employment Act (ADEA) forbids age discrimination against people who are age 40 or older. Discrimination can occur when the victim and the person who inflicted the discrimination are both over 40. The law prohibits discrimination in any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, benefits, and any other term or condition of employment.  Harassment can include, for example, offensive or derogatory remarks about a person's age. Harassment is illegal when it is so frequent or severe that it creates a hostile or offensive work environment or when it results in an adverse employment decision (such as the victim being fired, demoted or transferred). The harasser can be the victim's supervisor, a supervisor in another area, a co-worker, or someone who is not an employee of the employer, such as a client or customer.

60.     The Federal Bureau of Investigation subjected Plaintiff to different terms and conditions of his employment based on his age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-16, including but not limited to, subjecting him to sufficiently severe or pervasive harassment based on his age so as to alter the conditions and terms of his employment; condoning or tolerating such harassment; subjecting him to less favorable terms and conditions of employment, including but not limited to, harassing him, discriminating against him in job assignments, refusing to support his cases, and forcing him to accept transfers by making his work environment intolerable.

61.     The FBI's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

62.     The FBI's conduct discriminated against Plaintiff on the basis of his age in violation of Title VII.

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

13

63.    As a direct and proximate result of the FBI's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### THIRD CLAIM FOR RELIEF

(Retaliation/Hostile Work Environment in violation of
Title VII of the Civil Rights Act of 1964, as amended)

64.    The foregoing allegations are realleged and incorporated herein by reference.

65.    Plaintiff participated in statutorily protected activity by opposing practices targeted at him that were unlawful under Title IVV, including discrimination and harassment based on age and/or religion.

66.    As a result of Plaintiff's protected opposition to discrimination and harassment, the FBI retaliated against him by subjecting him to different terms and conditions of employment as described in this Complaint, including refusing to support his cases, constructively demoting him, and telling other special agents, and other personnel, that Rose had filed a formal EEO complaint.

67.    The FBI's actions taken against Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

68.    The FBI's conduct violated 42 U.S.C.§2000e-3(a) of Title VII, as applicable to the federal government.

69.    As a direct and proximate result of FBI actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

///

///

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff demands a trial by jury and prays that this Court declare that the Defendants' actions complained of herein violated the rights guaranteed to the Plaintiff and issue its judgment:

(1)     Declaring the actions complained of herein illegal;

(2)     Issuing an injunction enjoining the Defendants, their agents, employees, successors, attorneys and those acting in concert or participation with the Defendant, and at its direction from engaging in the unlawful practices set forth herein and any other employment practices shown to be in violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended.

(3)     Awarding Plaintiff compensatory damages of the statutory maximum for each Cause of Action contained herein, which the jury should find appropriate as a result of the Defendant's unlawful discriminatory actions taken as the result of Age and Religion;

(4)     Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees and expert witness fees, and other litigation expenses;

(5)     Pre-judgment and post-judgment interest at the highest lawful rate; and

///
///
///
///
///
///
///
///
///
///

15

_____
**COMPLAINT**

(6)     Granting such other and further relief as may be just and necessary to afford complete relief to the Plaintiff as this Court may deem just and proper.

Date:  Dec. 30, 2021                    DANIELS, FINE, ISRAEL,
                                        SCHONBUCH & LEBOVITS, LLP




By:_____

                    Moses Lebovits
                    Daniel Nickfardjam
            Attorneys For Plaintiff WILLIAM B. ROSE

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

**COMPLAINT**